Douglas L. Mahaffey, Esq., SBN 125980
**MAHAFFEY LAW GROUP**
**A Professional Corporation**
20162 SW Birch, Suite 300
Newport Beach, California 92660
Telephone: (949) 833-1400
Facsimile: (949) 263-8736
Email: dougm@mahaffeylaw.com

Attorneys for Plaintiffs CHIENAN CHEN and
CHUN-WU LI

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>MARK BASTORIOUS aka MAMDOH BASTOROUS,<br><br>Debtor. | CASE NO.: 6:17-bk-20092-MH<br><br>Chapter 7<br><br>**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2) and (a)(6)** |
| CHIENAN CHEN and CHUN-WU LI,<br><br>Plaintiffs,<br><br>vs.<br><br>MARK BASTOROUS; 3 COLUMNAR LADERA LLC; MIKE BAREH; MB CAPITAL GROUP, LLC; and DOES 1 through 5, inclusive,<br><br>Defendants. | |

Plaintiffs, CHIENAN CHEN and CHUN-WU LI through counsel, hereby allege against MARK BASTOROUS aka MAMDOH BASTOROUS; MIKE BAREH; 3 COLUMNAR, LADERA, LLC; and MB CAPITAL GROUP, LLC, as follows:

## PARTIES

1.      Plaintiff, CHIENAN CHEN ("Chen" or "Plaintiff"), was and is an individual residing in the County of Santa Clara, State of California.

1     2.     Plaintiff, CHUN-WU LI ("Li" or "Plaintiff"), was and is an individual residing

2 in the County of Riverside, State of California.

3     3.     Upon information and belief, Defendant, MARK BASTOROUS aka

4 MAMDOH BASTOROUS ("Bastorous" or "Defendant"), was and is an individual who

5 resides in the County of Riverside, State of California and is the owner, managing member,

6 and/or authorized agent and representative of 3 Columnar Ladera LLC, ("3 Columnar"), a

7 California limited liability company. Further, at all times herein mentioned Bastorous was

8 and is a real estate agent and/or broker licensed under the State of California. Further,

9 Bastorous was the authorized general member, general manager, and authorized agent of MB

10 Capital Group, LLC ("MB Capital"), a California limited liability company. At all times

11 herein mentioned Bastorous was the alter egos of the purported LLCs, 3 Columnar and MB

12 Capital.

13     4.     At all times herein mentioned 3 Columnar Ladera, LLC ("3 Columnar"), was

14 and is a California limited liability company doing business in the County of Orange, State

15 of California.

16     5.     At all times herein mentioned Defendant, Mike Bareh ("Bareh"), was and is an

17 individual who resides in the Orange County, CA.

18     6.     At all times herein mentioned 3 Columnar Ladera, LLC was a purported

19 California LLC doing business in the County of Orange, State of California and an entity

20 which was owned and operated by Bastorous, Bareh, and/or 3 Columnar.

21     7.     At all times herein mentioned MB Capital, a California limited liability

22 company was and is doing business in the County of Orange, State of California and an entity

23 which was owned and operated by Bastorous, Bareh and/or 3 Columnar.

24     8.     The purported LLC, 3 Columnar and DOES 1 through 5, was acting as a real

25 estate entity operated by a real estate broker, Bastorous. Bastorous and Bareh were at all

26 times herein using the corporate form of MB Capital, a purported California limited liability

27 company, unjustly and in derogation of the Plaintiffs' interests. Bastorous was at all times

28 herein using the corporate form of purported 3 Columnar Ladera, LLC unjustly and in

1     derogation of the Plaintiffs' interests.

2       9.     Bastorous and Bareh were at all times herein using the corporate form of MB

3 Capital, a purported California limited liability company, unjustly and in derogation of the

4 Plaintiffs' interests, acting together in concert as partners and profit participants. Bastorous

5 and Bareh were at all times herein borrowed $1.1 million from Union Bank for MB Capital,

6 LLC and were jointly involved as partners on projects located at 926 Crescent Heights in Los

7 Angeles, 15 Columnar and 15 Ladera in Orange County. Both Bastorous and Bareh had

8 access to and signed checks from an MB Capital bank account for joint construction projects.

9 Bastorous and Bareh operated throughout as partners who shared in profits in these, and

10 other, construction projects. Bareh received varied splits of net profits which ranged from

11 15% to 50% shares in addition to receiving commissions from Bastorous's property

12 acquisitions.

13       10.     Bastorous was at all times herein using the corporate form of purported 3

14 Columnar Ladera, LLC unjustly and in derogation of the Plaintiffs' interests.

15       11.     Plaintiffs are informed and believe and based on such information and belief

16 thereon allege that at all times herein mentioned there existed a unity of interest, management,

17 partnership and/or ownership between Bastorous, Bareh, 3 Columnar, and MB Capital. The

18 unity of interest, management, and/or ownership between said Defendants was such that any

19 individuality and separateness between these said Defendants has ceased and that said

20 Defendants were the alter ego of each other and that said Defendants have dominated and

21 controlled the business operation of 3 Columnar and MB Capital to such an extent MB

22 Capital and 3 Columnar were joint venturers and/or MB Capital used 3 Columnar as a funding

23 vehicle for the business operations of MB Capital and for the economic benefit of Bastorous

24 and Bareh. The unity of interest, management, and/or ownership between said Defendants

25 was such that any individuality and separateness between these said Defendants have ceased

26 and that said Defendants were the alter ego of each other and that said Defendants have

27 dominated and controlled the business operation of 3 Columnar and MB Capital including,

28 but not limited to, the following: use of assets for individual use and/or causing assets to be

-3-
COMPLAINT

1  transferred without adequate consideration; withdrawing funds from business accounts for

2  individual use thereby completely controlling, dominating, and managing 3 Columnar and/or

3  MB Capital including the comingling of assets for the convenience of said Defendants. As a

4  result thereof, there has been a lack of individuality of separateness to such an extent that 3

5  Columnar is an instrument for MB Capital, Bastorous, Bareh, and DOES 1 through 5 for their

6  own individual control and use and that 3 Columnar is a mere shell in an attempt to insulate

7  MB Capital, Bastorous, Bareh, and DOES 1 through 5 from any liability and as a result has

8  caused nonpayment to Plaintiffs of the obligations owed to Plaintiffs as set forth in this

9  Complaint to determine non-dischargeability of the debt claimed by Bastorous.

10      12.    Plaintiffs are informed and believe and based on such information and belief

11  thereon allege at all times herein mentioned 3 Columnar and/or MB Capital were

12  undercapitalized and failed to follow any requisite corporate formality. 3 Columnar was used

13  solely as a vehicle by MB Capital, Bastorous, and Bareh to insulate and create a shield from

14  liability to creditors including Plaintiffs' claims in this action. As such, an injustice will result

15  if Bastorous, Bareh, and MB Capital are not held individually liable for the debts of purported

16  LLC, 3 Columnar.

17      13.    At all times herein mentioned Bastorous, Bareh, 3 Columnar, MB Capital, and

18  DOES 1 through 5, inclusive were and are the partners, joint venturers, profit participants,

19  agents, servants, employees, representatives, and/or employers of each other said Defendant

20  and as such are sued herein individually and as the agent, servant, employee, representative,

21  and/or employer for each other said Defendant. Further, said Defendants, and each of them,

22  were at all times herein mentioned acting within the purpose and scope as such agency,

23  servitude, employment, and/or representation of each other said Defendant and with the

24  express and/or implied consent and/or ratification of each other said Defendants' acts.

25      14.    On December 9, 2016, after a nonjudicial foreclosure sale nonparty Center

26  Street took title under its senior deed of trust to the property. The completion of the non-

27  judicial foreclosure sale by Center Street has wiped out Plaintiffs' junior deeds of trust and

28  the security interest of Plaintiffs on the property which was to be used for commercial

1  development and not for residential use.  Accordingly, Plaintiffs may pursue collection of

2  money due under their respective written promissory notes in the principal amounts of

3  $150,000 as to Chen and $100,000 as to Li because their claims are not barred by any anti-

4  deficiency rules under California Code of Civil Procedure § 580 *et seq.*

5  **JURISDICTION AND VENUE**

6  15.    On December 8, 2017, Bastorous filed a voluntary petition for relief pursuant

7  to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central

8  District of California.

9  16.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

10  § 157 and § 1334.

11  17.    This is an action pursuant to Rules 4007 and 7001 of the Federal Rules of

12  Bankruptcy Procedure for a determination that the debts owed by Defendant to Plaintiffs are

13  not dischargeable under §§ 523(a)(2)(A), (a)(4) and (a)(6) of the Bankruptcy Code.  As such,

14  this matter is a core proceeding under 28 U.S.C. § 157 (b)(2)(A), (I) and (O).  The debts owed

15  are the subject of ongoing litigation the California Superior Court for the County of Orange.

16  18.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

17  **ALLEGATIONS COMMON TO EACH COUNT**

18  19.    On or about July 24, 2015, in Orange County, California, Chen, 3 Columnar,

19  and DOES 1 through 50 entered into a written agreement in the form of a promissory note

20  wherein Chen agreed to loan to 3 Columnar and DOES 1 through 5 the principal amount of

21  $150,000 in accordance with the terms of the said written promissory note.  A true and correct

22  copy of the promissory note is attached to this nondischargeability Complaint as **Exhibit 1**.

23  Said promissory note was prepared by Bastorous, with the full ratification of Bareh, and

24  negotiated by Bastorous on behalf of 3 Columnar and Bareh and DOES 1 through 5. The note

25  had a maturity date of July 23, 2016 affixed to it.

26  20.    On or about July 21, 2015, Li, 3 Columnar, and DOES 1 through 5 entered into

27  a written agreement in the form of a promissory note wherein Chen agreed to loan to 3

28  Columnar and DOES 1 through 5 the principal amount of $100,000 in accordance with the

1 terms of the said written promissory note. A true and correct copy of the promissory note is

2 attached as **Exhibit 2**. Said promissory note was prepared by Bastorous, with the full

3 ratification of Bareh, and negotiated by Bastorous on behalf of 3 Columnar and Bareh and

4 DOES 1 through 5. The note had a maturity date of July 20, 2016 affixed to it.

5      21.   On or about August 8, 2015, Chen entered into a written Subordination

6 Agreement with 3 Columnar and DOES 1 through 5, inclusive regarding Chen's $150,000

7 note secured by a Deed of Trust. A true and correct copy of this written Subordination

8 Agreement is attached hereto as **Exhibit 3**. On August 8, and prior thereto, Bastorous stated

9 to Chen the money from the loan would only be used in the improvement of the property

10 which would increase the property value and Chen's security interest. Bareh fully ratified, as

11 a partner of Bastorous, this representation.

12      22.   On or about August 10, 2015, Li entered into a written Subordination

13 Agreement with 3 Columnar and DOES 1 through 5, inclusive regarding Li's $100,000 note

14 secured by a Deed of Trust. A true and correct copy of this written Subordination Agreement

15 is attached hereto as **Exhibit 4**. On August 10, and prior thereto, Bastorous stated to Li the

16 money from the loan would only be used in the improvement of the property which would

17 increase the value of the property and Li's security interest. Bareh fully ratified, as a partner

18 of Bastorous, this representation.

19      23.   Plaintiffs in their respective Subordination Agreements subordinated their

20 security interest and deeds of trust on the property to Center Street. On December 9, 2016,

21 after a nonjudicial foreclosure sale nonparty Center Street took title under its senior deed of

22 trust to the property. The completion of the nonjudicial foreclosure sale by Center Street has

23 wiped out Plaintiffs' junior deed of trust and the security interest of Plaintiffs on the property

24 which was to be used for commercial development and not for residential use. Accordingly,

25 Plaintiffs may pursue collection of money due under their respective written promissory notes

26 in the principal amounts of $150,000 as to Chen and $100,000 as to Li because their claims

27 are not barred by any anti-deficiency rules under California Code of Civil Procedure § 580

28 *et seq.*

24.     Throughout, Bastorous and Bareh operated as partners and profit participants that shared risk and profit taking on the ventures that led to fraudulent inducements of Chen and Li. Bastorous and Bareh jointly managed entities and properties and so engaged jointly in fraud on Plaintiffs. Violations of Corporations Code § 25110, with the intent to deceive or defraud, results in the joint and several liability of all partners pursuant to §§ 25504 and 25504.1.

25.     Bastorous and Bareh through and with alter egos, 3 Columnar and MB Capital, violated Section 10(b) of the Securities Exchange Act of 1934 which makes it "unlawful for any person... [t]o use or employ, in connection with the purchase or sale of any security..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j. Rule 10b-5, which implements this provision, forbids the use of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business that operates... as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Thus, under both Section 10(b) and SEC Rule 10b-5, any fraudulent conduct *in connection with* the purchase or sale of any *security*" falls within the rubric securities fraud.

26.     Bastorous and Bareh acted in concert, as partners, to obtain money from Plaintiffs by false or fraudulent pretenses, rendering each of them jointly and severally liable for damages caused to Plaintiffs under 15 U.S.C. § 78u-(f)(2).

## BREACH OF CHEN'S PROMISSORY NOTE

27.     On or about July 24, 2015 in Orange County, California, Chen, and purported LLC 3 Columnar, and DOES 1 through 5 entered into a written agreement in the form of a promissory note negotiated through a California broker wherein Chen agreed to loan to purported LLC, 3 Columnar and DOES 1 through 5 the principal amount of $150,000 in accordance with the terms of the said written promissory note. [Exhibit 1.]

28.     Said promissory note was prepared by Bastorous and Bareh and negotiated by them on behalf of 3 Columnar and DOES 1 through 5.

29.     The note was due to be paid on July 23, 2016.

30.    3 Columnar and DOES 1 through 5 have failed and refused despite demand made by Chen to pay the amount due under the note.

31.    3 Columnar and DOES 1 through 5 are in breach of the terms of the note.

32.    Chen has performed all of the terms and conditions under the said written promissory note on his part to be performed.

33.    That as a direct and proximate result of 3 Columnar and DOES 1 through 50, inclusive breach of the said written promissory note agreement Chen has been damaged in the amount of $150,000 plus interest at the rate of 20% per annum.

34.    The promissory note contains an attorney fee clause and Chen is entitled to recover all attorney's fees and costs according to proof.

**BREACH OF LI'S PROMISSORY NOTE**

35.    On or about July 21, 2015 in Orange County, California, Li and purported LLC, 3 Columnar and DOES 1 through 5 entered into a written agreement in the form of a promissory note negotiated through a California broker wherein Li agreed to loan to purported LLC, 3 Columnar and DOES 1 through 5 the principal amount of $100,000 in accordance with the terms of the said written promissory note. [Exhibit 2.]

36.    Said promissory note was prepared by Bastorous and Bareh and negotiated by them purportedly on behalf of the purported LLC, Defendant 3 Columnar, and DOES 1 through 5.

37.    The note was due to be paid on July 20, 2016.

38.    The purported LLC, 3 Columnar and DOES 1 through 5 have failed and refused despite demand made by Chen to pay the amount due under the note.

39.    Li has performed all of the terms and conditions under the said written promissory note on his part to be performed.

40.    That as a direct and proximate result of the purported LLC, 3 Columnar and DOES 1 through 5, inclusive breach of the said written promissory note agreement Li has been damaged in the amount of $100,000 plus interest at the rate of 20% per annum.

41.    The promissory note contains an attorney fee clause and Li is entitled to recover

1 | all attorneys' fees and costs according to proof.

2 | **BREACH OF CHEN'S PROMISSORY NOTE**

3 | 42.    On or about July 24, 2015 in Orange County, California, Chen and Defendants

4 | Bastorous and Bareh as the alter egos of the purported LLC, 3 Columnar and DOES 1 through

5 | 5 entered into a written agreement in the form of a promissory note negotiated through a

6 | California broker wherein Chen agreed to loan to Bastorous and Bareh as the alter egos of

7 | the purported LLC, 3 Columnar and DOES 1 through 5 the principal amount of $150,000 in

8 | accordance with the terms of the said written promissory note.

9 | 43.    Said promissory note was prepared by Bastorous and Bareh and negotiated by

10 | them on behalf of purported LLC, their alter egos, 3 Columnar and DOES 1 through 5.

11 | 44.    The note was due to be paid on July 23, 2016.

12 | 45.    Bastorous and Bareh as the alter egos of purported LLC, 3 Columnar and

13 | DOES 1 through 5 have failed and refused despite demand made by Chen to pay the amount

14 | due under the note.

15 | 46.    Bastorous and Bareh as the alter egos of purported LLC, 3 Columnar and

16 | DOES 1 through 5 are in breach of the terms of the note.

17 | 47.    Chen has performed all of the terms and conditions under the said written

18 | promissory note on his part to be performed.

19 | 48.    That as a direct and proximate result of Bastorous and Bareh as the alter egos

20 | of purported LLC, 3 Columnar and DOES 1 through 50, inclusive breach of the said written

21 | promissory note agreement Chen has been damaged in the amount of $150,000 plus interest

22 | at the rate of 20% per annum.

23 | 49.    The promissory note contains an attorney fee clause and Chen is entitled to

24 | recover all attorney's fees and costs according to proof.

25 | **BREACH OF LI'S PROMISSORY NOTE**

26 | 50.    On or about July 24, 2015 in Orange County, California, Li and Bastorous and

27 | Bareh, as the alter egos of purported LLC, 3 Columnar and DOES 1 through 5 entered into a

28 | written agreement in the form of a promissory note negotiated through a California broker

1  wherein Li agreed to loan to Bastorous and Bareh as the alter egos of the purported LLC, 3

2  Columnar and DOES 1 through 5, the principal amount of $100,000 in accordance with the

3  terms of the said written promissory note.

4      51.    Said promissory note was prepared by Bastorous and Bareh and negotiated by

5  them on behalf of purported LLC, their alter egos, 3 Columnar, and DOES 1 through 5.

6      52.    The note was due to be paid on July 23, 2016.

7      53.    Bastorous and Bareh as the alter egos of purported LLC, 3 Columnar and

8  DOES 1 through 5 have failed and refused despite demand made by Li to pay the amount due

9  under the note.

10     54.    Bastorous and Bareh as the alter egos of purported LLC, 3 Columnar and

11  DOES 1 through 5 are in breach of the terms of the note.

12     55.    Li has performed all of the terms and conditions under the said written

13  promissory note on his part to be performed.

14     56.    That as a direct and proximate result of Bastorous and Bareh as the alter egos

15  of purported LLC, 3 Columnar and DOES 1 through 50, inclusive breach of the said written

16  promissory note agreement Li has been damaged in the amount of $100,000 plus interest at

17  the rate of 20% per annum.

18     57.    The promissory note contains an attorney fee clause and Li is entitled to recover

19  all attorney's fees and costs according to proof.

20              **FRAUD IN THE INDUCEMENT BY MISREPRESENTATION**

21              **AND CONCEALMENT PERPETRATED ON CHEN**

22     58.    On several occasions during the months of May through July 2015, Bastorous

23  and Bareh, the alter egos of 3 Columnar, and MB Capital approached Chen to solicit and

24  induce a $150,000 investment of monies for a new home construction project promising the

25  investment was for 12 months only and that Bastorous and Bareh the alter egos of 3

26  Columnar, and MB Capital, would repay Chen in full (principal and interest) by the maturity

27  date.

28     59.    The material facts stated by Bastorous and Bareh as the alter egos of 3

1 | Columnar and MB Capital to Chen between the dates of May 1, 2015 and July 24, 2015,

2 | which were made in person, that induced Chen to make the $150,000 investment, include but

3 | are not limited to, the following:

4 |        a.     The $150,000 investment was for construction of a single-family home

5 | in the Ladera Ranch neighborhood where the land that secured the Chen Note was located,

6 | identified as Lot 44, Tract 15988 (the subject single-family home).

7 |        b.     Construction of the subject single-family home was commencing during

8 | the month of June 2015 and would be completed in less than one year.

9 |        c.     The $150,000 investment by Chen would be used exclusively for

10 | construction of the Subject single-family home, and not for any other purposes.

11 |        d.     3 Columnar was a legitimate LLC that had adequate capitalization, and

12 | was the 100% owner of the land free and clear of any other liens.

13 |        e.     The $150,000 investment by Chen would be secured by a deed of trust

14 | that would be recorded in a first position on the property and have sufficient equity to pay for

15 | any unpaid balance of the investment.

16 |     60.    At all times herein mentioned the said misrepresentations by Bastorous and

17 | Bareh as the alter egos of 3 Columnar and MB Capital as set forth in paragraph 52 were

18 | designed to induce Chen into making the said $150,000 investment in order to economically

19 | benefit said Defendants to the economic detriment of Chen.

20 |     61.    Chen's reliance on said Defendants' false representations was a substantial

21 | factor in causing him to invest the $150,000 with Bastorous and Bareh, the alter egos of 3

22 | Columnar and MB Capital.

23 |     62.    Chen's reliance on the false representations of Bastorous and Bareh, the alter

24 | egos of 3 Columnar, and MB Capital was reasonable as Bastorous was acting through his real

25 | estate broker's license and thus Chen reasonably relied that Bastorous was not violating his

26 | license by committing a fraud on Chen.

27 |     63.    The said representations made by Bastorous and Bareh as the alter egos of 3

28 | Columnar and MB Capital and DOES 1 through 5 were false because:

1   a. Bastorous and Bareh as the alter egos of 3 Columnar, and MB Capital,

2 had no intention of using the $150,000 investment money for construction of the subject

3 single-family home.

4   b. Bastorous and Bareh intended and concealed that they would use the

5 $150,000 investment money for personal and/or other uses that would not increase the value

6 of the security.

7   c. Bastorous and Bareh knew and concealed that the purported LLC, 3

8 Columnar and MB Capital were shell entities set up to defraud investors who could not collect

9 against it because it would be judgment proof at the maturity date of the deadline to pay back

10 the investment.

11   d. Bastorous and Bareh knew and concealed that the purported LLC, 3

12 Columnar, and MB Capital, did not own 100% of the Lot where the subject single-family

13 home was purportedly to be built, and that in truth, other joint owners, including but not

14 limited to the attorney for Bastorous and Bareh, held an interest in the subject lot.

15   e. Bastorous and Bareh knew and concealed that the purported LLC, 3

16 Columnar and MB Capital would have to subordinate the Chen deed of trust which was

17 represented to secure the $150,000 investment, to a construction loan, and Bastorous knew

18 and concealed that Bastorous and Bareh would misrepresent that the construction loan was

19 needed to build the subject single-family home, when the truth was the construction loan was

20 going to be used on for other than improvements for the Subject single-family home.

21   f. Bastorous and Bareh knew and concealed that the purported LLC, 3

22 Columnar and MB Capital, would not start construction of the subject single-family home in

23 June 2015 and Bastorous and Bareh knew and concealed that the purported LLC, 3 Columnar

24 would never construct the subject single-family home, and that the entire scheme was to

25 misrepresent that fact to induce the $150,000 investment.

26  64. At all times herein mentioned the said representations and concealed material

27 facts were made and concealed to induce Chen to invest $150,000 money in order to

28 economically benefit Bastorous and Bareh and DOES 1 through 5 to the economic detriment

1  of Chen.

2      65.    The subject misrepresentations and concealed material facts did in fact induce
3  Chen to make the $150,000 to Bastorous and Bareh as the alter egos of 3 Columnar, and MB
4  Capital and Chen has been damaged by the loss of the $150,000 which Bastorous and Bareh
5  as the alter egos of 3 Columnar, and MB Capital has failed and refused to pay back with
6  interest.

7      66.    As a direct and proximate result of Bastorous and Bareh as the alter egos of 3
8  Columnar, and MB Capital and DOES 1 through 5 fraudulent misrepresentations and
9  concealed material facts, Chen has been damaged in the amount of $150,000 plus interest at
10  the rate of 20% per annum from July 23, 2015 to date of entry of judgment.

11      67.    At all times herein mentioned Bastorous', Bareh's, and DOES 1 through 5's,
12  fraudulent conduct was done intentionally, willfully, maliciously and with a callous disregard
13  for the rights of Chen in order to economically benefit Defendants to the economic detriment
14  of Chen. Therefore, Chen is entitled to punitive or exemplary damages according to proof.

15      **FRAUD IN THE INDUCEMENT BY MISREPRESENTATION**
16      **AND CONCEALMENT PERPETRATED ON LI**

17      68.    On several occasions during the months of May through July 2015, Bastorous
18  and Bareh, the alter egos of 3 Columnar, and MB Capital approached Li to solicit and induce
19  a $100,000 investment of monies for a new home construction project promising the
20  investment was for 12 months only and that Bastorous and Bareh the alter ego of 3 Columnar,
21  and MB Capital would repay Li in full (principal and interest) by the maturity date set forth
22  in a promissory note (Exhibit 2). The material facts stated by Bastorous and Bareh as the
23  alter egos of 3 Columnar and MB Capital to Li between the dates of May 1, 2015 and July
24  21, 2015, which were made in person, that induced Li to make the $100,000 investment,
25  include but are not limited to, the following:

26      a.    The $100,000 investment was for construction of a single-family home
27  in the Ladera Ranch neighborhood where the land that secured the Li note was located,
28  identified as Lot 44, Tract 15988 (the subject single-family home).

b.     Construction of the subject single-family home was commencing during the month of June 2015 and would be completed in less than one year.

c.     The $100,000 investment by Li would be used exclusively for construction of the Subject single-family home, and not for any other purposes.

d.     3 Columnar and MB Capital were legitimate entities that had adequate capitalization and was the 100% owner of the subject single-family home lot free and clear of any other liens.

e.     The $100,000 investment by Li would be secured by a deed of trust that would be recorded in a first position on the property and have sufficient equity to pay for any unpaid balance of the investment.

69.     At all times herein mentioned the said misrepresentations by Bastorous and Bareh as the alter egos of 3 Columnar and MB Capital as set forth in paragraph 52 were designed to induce Li into making the said $100,000 investment in order to economically benefit said Defendants to the economic detriment of Li.

70.     Li's reliance on said Defendants' false representations was a substantial factor in causing him to invest the $100,000 with Bastorous and Bareh, the alter egos of 3 Columnar and MB Capital.

71.     Li's reliance on the false representations of Bastorous and Bareh, the alter egos of 3 Columnar and MB Capital, was reasonable as Bastorous was acting through his real estate broker's license and thus Li reasonably relied that Bastorous and Bareh was not violating his license by committing a fraud on Li.

72.     The said representations made by Bastorous and Bareh as the alter egos of 3 Columnar, and DOES 1 through 5 were false because:

a.     Bastorous and Bareh as the alter egos of 3 Columnar and MB Capital, had no intention of using the $100,000 investment money for construction of the subject single-family home.

b.     Bastorous and Bareh intended and concealed that they would use the $100,000 investment money for personal and/or other uses that would not increase the value

1  of the security.

2      c.    Bastorous and Bareh knew and concealed that the purported LLC, 3
3  Columnar and MB Capital were shell entities set up to defraud investors who could not collect
4  against it because it would be judgment proof at the maturity date of the deadline to pay back
5  the investment.

6      d.    Bastorous and Bareh knew and concealed that the purported LLC, 3
7  Columnar, and MB Capital did not own 100% of the lot where the subject single-family home
8  was purportedly to be built, and that in truth, other joint owners, including but not limited to
9  the attorney for Bastorous and Bareh, held an interest in the subject lot.

10     e.    Bastorous and Bareh knew and concealed that the purported LLC, 3
11 Columnar and MB Capital would have to subordinate the Li deed of trust which was
12 represented to secure the $100,000 investment, to a construction loan, and Bastorous knew
13 and concealed that Bastorous and Bareh would misrepresent that the construction loan was
14 needed to build the Subject single-family home, when the truth was the construction loan was
15 going to be used on for other than improvements for the subject single-family home.

16     f.    Bastorous and Bareh knew and concealed that the purported LLC, 3
17 Columnar and MB Capital would not start construction of the Subject single-family home in
18 June 2015 and Bastorous and Bareh knew and concealed that the purported LLC, 3 Columnar
19 would never construct the subject single-family home, and that the entire scheme was to
20 misrepresent that fact to induce the $100,000 investment.

21     73.    At all times herein mentioned the said representations and concealed material
22 facts were made and concealed to induce Li to invest $100,000 money in order to
23 economically benefit the Defendant Bastorous, Bareh, and DOES 1 through 5 to the
24 economic detriment of Li.

25     74.    The subject misrepresentations and concealed material facts did in fact induce
26 Li to make the $100,000 to Bastorous and Bareh as the alter egos of 3 Columnar, and MB
27 Capital and Li has been damaged by the loss of the $100,000 which Bastorous and Bareh as
28 the alter egos of 3 Columnar and MB Capital, has failed and refused to pay back with interest.

-15-
COMPLAINT

75.    As a direct and proximate result of Bastorous and Bareh as the alter egos of 3 Columnar and MB Capital, and DOES 1 through 5 fraudulent misrepresentations and concealed material facts, Li has been damaged in the amount of $100,000 plus interest at the rate of 20% per annum from July 21, 2015 to date of entry of judgment.

76.    At all times herein mentioned Bastorous', Bareh's, and DOES 1 through 5's, fraudulent conduct was done intentionally, willfully, maliciously and with a callous disregard for the rights of Li in order to economically benefit Defendants to the economic detriment of Li. Therefore, Li is entitled to punitive or exemplary damages according to proof.

## OFFER AND SALE TO CHEN OF UNQUALIFIED, NON-EXEMPT SECURITIES IN VIOLATION OF CORPORATIONS CODE § 25110

77.    Commencing at least as early as July 2015, 3 Columnar, MB Capital, Bastorous and Bareh, and DOES 1 through 5 offered and sold securities under an issuer transaction in the State of California.

78.    The investments offered and sold were including, but not limited to, the investments made by Chen as set forth in this non-dischargeability Complaint.  Said investments were the result of a marketing, advertising, and/or presentation made by and/or on behalf of purported LLC, 3 Columnar, MB Capital, Bastorous and Bareh, and DOES 1 through 5 with the authorization, consent, direction, and/or knowledge thereof and consent thereto.  The investments referred to herein were "issuer transactions" within the meaning of 25010 and 25011 of the California Corporations Code.

79.    The Defendants offered and sold the said securities referred to herein in the State of California within the meaning of Corporations Code sections 25008 and 25017.

80.    The California state commissioner has not issued a permit or other form of qualification authorizing any one defendant to offer and sell the said securities referred to herein in the State of California.

81.    The offer and sale of the securities are not exempt from the requirement of qualification under Corporations Code sections 25110.

82.    That as a direct and proximate result of said Defendants and each of them

1  violation of Corporations Code sections 25110, Chen has been damaged in the amount of

2  $150,000 together with interest thereon at the rate of 10% from July 23, 2015 to date of entry

3  of judgment.

4      **OFFER AND SALE TO LI OF UNQUALIFIED, NON-EXEMPT**

5      **SECURITIES IN VIOLATION OF CORPORATIONS CODE § 25110**

6      83.    Commencing at least as early as July 2015, purported LLC 3 Columnar, MB

7  Capital, Bastorous, Bareh, and DOES 1 through 5 offered and sold securities under an issuer

8  transaction in the State of California.

9      84.    The investments offered and sold were including, but not limited to, the

10  investments made by Li as set forth in this nondischargeability complaint. Said investments

11  were the result of a marketing, advertising, and/or presentation made by and/or on behalf of

12  3 Columnar, MB Capital, Bastorous, Bareh, and DOES 1 through 5 with the authorization,

13  consent, direction, and/or knowledge thereof and consent thereto. The investments referred

14  to herein were "issuer transactions" within the meaning of 25010 and 25011 of the California

15  Corporations Code.

16      85.    The Defendants offered and sold the said securities referred to herein in the

17  State of California within the meaning of Corporations Code sections 25008 and 25017.

18      86.    The California state commissioner has not issued a permit or other form of

19  qualification authorizing any one defendant to offer and sell the said securities referred to

20  herein in the State of California.

21      87.    The offer and sale of the securities are not exempt from the requirement of

22  qualification under Corporations Code sections 25110.

23      88.    That as a direct and proximate result of said Defendants and each of them

24  violation of Corporations Code section 25110, Li have been damaged in the amount of

25  $100,000 together with interest thereon at the rate of 10% from July 21, 2015 to date of entry

26  of judgment.

27  ///

28  ///

## MISREPRESENTATIONS OF MATERIAL FACTS TO CHEN IN VIOLATION

## OF CORPORATIONS CODE § 25401

89.    In the offering, advertising, and/or selling of the securities referred to herein, Defendants made untrue statements and/or misrepresentations of material facts to Chen including the following:

90.    The investment was for construction of a single-family home in the Ladera Ranch neighborhood where the land that secured the Chen Note was located, identified as Lot 44, Tract 15988.

91.    Construction was commencing during the month of June 2015 and would be completed in less than one year.

92.    The investment by Chen was to pay for the construction of the single-family home and would be used exclusively for that.

93.    3 Columnar owned the lot free and clear of any other liens.

94.    The investment loan by Chen would be secured by a deed of trust that would be recorded in a first position on the property.

95.    In offering and selling these securities referred to herein, Defendants also omitted to state material facts to Plaintiffs including, but not limited to, that 3 Columnar was a funding vehicle for MB Capital; that purported LLC 3 Columnar was transferring funds for the use of MB Capital and/or Bastorous, Bareh and the purported LLC 3 Columnar did not have sufficient funds at any time to start and/or complete the 3 Columnar Ladera Ranch project, no construction was intended, any construction loan obtained would not be used to improve the Subject single family home lot.

96.    Defendants made untrue statements and/or omissions to disclose the said material facts in connection with the offer and sale of the said securities constitute a violation of California Corporations Code section 25401.

97.    That as a direct and proximate result of said Defendants a violation of California Corporations Code section 25401.    Chen has been damaged in the amount of $150,000 together with legal interest thereon from July 23, 2016 to date of entry of judgment.

98.    Defendants' performance of the said fraudulent acts in violation of California Corporations Code section 25401 were performed intentionally maliciously, fraudulently, and with a callous disregarding of Plaintiffs and in order to economically benefit Defendants to the financial detriment of Plaintiffs.    Therefore, Plaintiffs are entitled to punitive or exemplary damages according to proof.

## MISREPRESENTATIONS OF MATERIAL FACTS TO LI IN VIOLATION
## OF CORPORATIONS CODE § 25401

99.    In the offering, advertising, and/or selling of the securities referred to herein, Defendants made untrue statements and/or misrepresentations of material facts to Li including the following:

100.    The $100,000 investment was for construction of a single-family home in the Ladera Ranch neighborhood where the land that secured the Li Note was located, identified as Lot 44, Tract 15988.

101.    Construction was commencing during the month of June 2015 and would be completed in less than one year.

102.    The $100,000 investment by Li was to pay for the construction of the single-family home and would be used exclusively for that.

103.    Purported LLC, 3 Columnar owned the lot free and clear of any other liens.

104.    The $100,000 investment loan by Li would be secured by a deed of trust that would be recorded in a first position on the property.

105.    In offering and selling these securities referred to herein, Defendants also omitted to state material facts to Plaintiffs including, but not limited to, that purported LLC 3 Columnar was a funding vehicle for MB Capital; that purported LLC 3 Columnar was transferring funds for the use of MB Capital and/or Bastorous, Bareh, and purported LLC 3 Columnar did not have sufficient funds at any time to start and/or complete the purported LLC 3 Columnar Ladera Ranch project, no construction was intended, any construction loan obtained would not be used to improve the Subject single family home lot..

106.    Defendants made untrue statements and/or omissions to disclose the said

1  material facts in connection with the offer and sale of the said securities constitute a violation

2  of California Corporations Code section 25401.

3      107.   That as a direct and proximate result of said Defendants a violation of

4  California Corporations Code section 25401. Li has been damaged in the amount of

5  $100,000 together with legal interest thereon from July 21, 2016 to date of entry of judgment.

6      108.   Defendants' performance of the said fraudulent acts in violation of California

7  Corporations Code section 25401 were performed intentionally maliciously, fraudulently,

8  and with a callous disregarding of Plaintiffs and in order to economically benefit Defendants

9  to the financial detriment of Plaintiffs.  Therefore, Plaintiffs are entitled to punitive or

10  exemplary damages according to proof.

11                                                   **FIRST COUNT**

12  (For a determination that the debt to Plaintiffs are non-dischargeable pursuant to

13  § 523(a)(2)(A) of the Bankruptcy Code against all Defendants)

14      109.   Plaintiffs repeats and reiterates each of the allegations contained in this

15  nondischargeability complaint 1 through 108, as if more fully set forth at length herein.

16      110.   Defendants obtained the funds in their possession by misrepresenting they

17  would repay the investment and in so doing acted to deceive both Plaintiffs with regard to

18  money that defendants received, in amounts according to proof.

19      111.   Defendants' misrepresentations and warranties were designed to induce

20  Plaintiffs into entering into the subject Subordination Agreements which eliminated their

21  ability to foreclose on the subject property to collect the amount owned under the respective

22  investments by Plaintiffs. Defendants, in so doing, fraudulently stole and converted

23  Plaintiffs' funds.

24      112.   Plaintiffs, and others, justifiably relied upon the misrepresentations and

25  warranties made by Defendants, as Plaintiffs had no reason to question the promises prior to

26  the deceit. Defendants' false representations and warranties have since caused Plaintiffs to

27  lose their respective security interest in the property under their respective deeds of trust used

28  to secure Plaintiffs investments.

113.   Each of the representations made by Defendants were materially false when made. Defendants knew or should have known that the foregoing representations were false when made.

114.   Defendants made such false representations with the specific intent to mislead the Plaintiffs for their own business's own personal benefit and/or in furtherance of their own personal and its business interests.

115.   Through Defendants' conversion and theft, Defendants obtained money, property or services by false pretenses, false representation and/or actual fraud.

116.   Accordingly, the debt owed by Defendants to Plaintiffs is not dischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

## SECOND COUNT

(For a determination that the debt to Plaintiffs are non-dischargeable pursuant to

§ 523(a)(6) of the Bankruptcy Code)

117.   Plaintiffs repeat and reiterate each of the allegations contained in this nondischargeability complaint Number 1 through 116, as if more fully set forth herein at length.

118.   By converting and stealing Plaintiffs' funds, without any authorization or consent by Plaintiffs, Defendants willfully and maliciously caused damage and injury to the property of Plaintiffs.

119.   Accordingly, the debt owed by Defendants to Plaintiffs is not dischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs demand relief as follows:

(a)   an order determining the debt owed by Defendants to Plaintiff is not dischargeable pursuant to § 523(a)(2)(A) and/or (a)(6) of the Bankruptcy Code;

(b)   an order awarding Plaintiffs the cost and expenses, including reasonable attorneys' fees and the costs of suit; and,

1      (c)    an order awarding Plaintiffs such other and further relief as may be just and

2  proper.

3

4  DATED: March 12, 2018           **MAHAFFEY LAW GROUP, P.C.**

5

6                    By: _____

7                        DOUGLAS L. MAHAFFEY
                        Attorneys for Plaintiffs CHIENAN CHEN and

8                        CHUN-WU LI

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## SECURED PROMISSORY NOTE

**$150,000.00**

FOR VALUE RECEIVED, the undersigned, 3 Columnar Ladera, LLC (hereinafter "Makers") hereby promises to pay to the order of Chienan Chen ("Payee") the sum of One Hundred and Fifty Thousand Dollars ($150,000.00), together with interest thereon at the rate of **20%** for one year (the 'Indebtedness"). Payments shall be made by Makers hereunder pursuant to Paragraph 1 below.

1. Payments. Makers shall pay to Payee interest of 20% for one year. No payments shall be made to Payee until the maturity date. At that time principal and accrued interest shall be paid by Maker to Payee.
2. The Maturity Date of this loan is **July 23, 2016**.

**BALLOON NOTICE:** NOTICE IS HEREBY GIVEN THAT THE TERMS OF THIS NOTE PROVIDE FOR A BALLOON PAYMENT BEING DUE AT THE MATURITY DATE.

2 Tender of Payment. All payments required under this Note shall be due and payable in lawful money of the United States of America. All payments made on this Note shall be credited first to charges other than interest and principal, second to interest then due, and third to principal. Notwithstanding any provision in this Note, the total liability for payment in the nature of interest shall not exceed the limit now imposed by applicable laws of the State of California.

3 Prepayment. The unpaid principal balance of this Note may be prepaid in part without the express written consent of the Payee. The unpaid principal balance may be paid by Makers to Payee in its entirety at any time prior to the Maturity Date.

4. Remedies for Default/Acceleration Clause. Upon the failure to make timely payment of any amount due under the terms of this Note and such failure continues for three (3) days after written notice to Makers, the entire unpaid principal balance and interest due as of the date of the default under this note shall become due and payable, at the election of the Payee.

5. Cumulative Rights. No delay on the part of the Payee, or under any document or instrument executed in connection herewith, shall operate as a waiver thereof, nor shall a single or partial exercise of any other power or right. The Waiver by Payee of any payment or any default in payment or any delay in payment allowed by Payee shall not modify the terms hereof, but shall be deemed an isolated event with Payee being entitled to Maker's full and complete performance.

6. Attorneys' Fees and Costs. In the event a Default shall occur, and in the event that thereafter action is commenced to collect amounts remaining due hereunder, then and in such case Makers promises to pay Payee's reasonable attorneys' fees and all expenses incurred in connection with such action.

7. Notices. All notices, requests, demands, or other communications under this Agreement shall be in writing. Notice shall be sufficiently given for all purposes as follows:

    i.    Personal delivery. When personally delivered to the recipient. Notice is effective on delivery.

    ii.    First-class mail. When mailed first class to the last address of the recipient known to the Party giving notice. Notice is effective three (3) mail delivery days after deposit in a United States Postal Service office or mailbox.

    iii.    Certified mail. When mailed certified mail, return receipt requested. Notice is effective on receipt, if delivery is confirmed by a return receipt. Overnight delivery. When delivered by overnight delivery via Federal Express/Airborne/United Parcel Service, charges prepaid or charged to the sender's account. Notice is effective on delivery, if delivery is confirmed by the delivery service.

Addresses for purpose of giving notice are as set forth following the signatures of the Parties below. Any Party may change its address by giving the other Party notice of the change in any manner permitted by this Agreement. Any correctly addressed notice that is refused, unclaimed, or undeliverable because of an act or omission of the Party to be notified shall be deemed effective as of the first date that said notice was refused, unclaimed, or deemed undeliverable by the postal authorities, messenger, or overnight delivery service.

If to Makers:   3 Columnar Ladera, LLC
                4740 Green River Road, Ste 103
                Corona, Ca 92880

If to Payee:    Chienan Chen
                2748 Glorietta Circle
                Santa Clara, CA 95051

8. Governing Law. This Note is being executed and delivered and is performable in the State of California, and the laws of such state shall govern the construction, validity, enforcement and interpretation hereof, except to the extent federal laws otherwise govern the validity, construction, enforcement, and interpretation hereof. Jurisdiction and venue over any controversy, claim or remedy, arising out of, or relating to, this Note or any breach hereof shall be the Superior Court of ORANGE County, California.

9. Headings. The headings of the sections of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

10. Successors and Assigns. All of the covenants, stipulations, promises and agreements in this Note contained by or on behalf of Makers shall bind his heirs, executors, personal representatives, successors, and assigns, whether so expressed or not; provided, however, that Makers may not, without the prior written consent of the Holder hereof, assign any rights, duties, or obligations under this Note.

11. Time is of the Essence. Time is of the essence of this Note and of each and every provision hereof.

12. Note. As used herein all references to the "Note" shall refer to this Promissory Note.

13. Security. This Promissory Note shall be secured by a Deed of Trust against the property most commonly known as (**3 Columnar St Ladera Ranch, CA 92694**). Payee acknowledges the sufficiency of the Deed of Trust and the Collateral that is secured by the Deed of Trust.

14. Acknowledgements and Representations of Payee. Payee acknowledges and represents to Payee the following:
    1. The funds that are being tendered to Maker are lawful and of non-criminal origin.
    2. The funds being tendered to Maker are intended as a loan and not an investment.
    3. Payee shall have no equity or ownership stake in any endeavor Maker chooses to use the borrowed funds to engage in.
    3. No representations have been made to Payee concerning the value, condition or marketability of the property securing the loan. Payee shall conduct has conducted his/her own investigation and is satisfied with the sufficiency of the security pursuant to Section 13 above.
    4. Payee is fully informed of his status as lender in this transaction and does not now nor shall Payee in the future make any claim of ownership in the secured property except as a holder of a security interest in the property.

15. Severability. If any court of competent jurisdiction holds any provision in this Promissory Note invalid or unenforceable, the other provisions of this Promissory Note will remain in full force and effect. Any provisions of this Promissory Note held invalid or unenforceable only in part or degree will remain in full force and effect to the extent no held invalid or unenforceable.

16. Parties in Interest. This Promissory Note shall bind Makers and its successors and permitted assigns. This Promissory Note shall not be assigned or transferred by Makers without the express written consent of Payee, except by will or, in default thereof, by operation of law.

17. Section Headings, Construction. The headings of sections in this Promissory Note are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Promissory Note unless otherwise specified.

18. Savings Clause. In the event any provisions hereof shall result, for any reason and at any time, in an effective rate of interest that exceeds the limit of usury or any other law applicable to interest on the indebtedness evidenced hereby, all sums in excess of those lawfully collectable as interest for the period in question shall be (a) applied, to the extent of such excess, against the unpaid principal amount evidenced hereby with the same force and effect as though Makers had agreed to accept such extra payment(s) as a prepayment or (b) if the indebtedness has been fully paid, refunded by Makers to Payee to the extent of such excess.

3 Columnar Faders, LLC

_____        Date: 7/24/15
Maker

_____        Date: _____
Maker

_____        Date: _____
Payee

# EXHIBIT 2

# SECURED PROMISSORY NOTE

**$100,000.00**

FOR VALUE RECEIVED, the undersigned, 3 Columnar Ladera, LLC (hereinafter "Makers") hereby promises to pay to the order of CHUN-WU LI ("Payee") the sum of **One Hundred Thousand Dollars ($100,000.00)**, together with interest thereon at the rate of 20% for one year (the "Indebtedness"). Payments shall be made by Makers hereunder pursuant to Paragraph 1 below:

1. Payments. Makers shall pay to Payee interest of 20% for one year. No payments shall be made to Payee until the maturity date. At that time principal and accrued interest shall be paid by Maker to Payee.
2. The Maturity Date of this loan is July 20, 2016.

## BALLOON NOTICE: NOTICE IS HEREBY GIVEN THAT THE TERMS OF THIS NOTE PROVIDE FOR A BALLOON PAYMENT BEING DUE AT THE MATURITY DATE.

2 Tender of Payment. All payments required under this Note shall be due and payable in lawful money of the United States of America. All payments made on this Note shall be credited first to charges other than interest and principal, second to interest then due, and third to principal. Notwithstanding any provision in this Note, the total liability for payment in the nature of interest shall not exceed the limit now imposed by applicable laws of the State of California.

3 Prepayment. The unpaid principal balance of this Note may be prepaid in part without the express written consent of the Payee. The unpaid principal balance may be paid by Makers to Payee in its entirety at any time prior to the Maturity Date.

4. Remedies for Default/Acceleration Clause. Upon the failure to make timely payment of any amount due under the terms of this Note and such failure continues for three (3) days after written notice to Makers, the entire unpaid principal balance and interest due as of the date of the default under this note shall become due and payable, at the election of the Payee.

5. Cumulative Rights. No delay on the part of the Payee, or under any document or instrument executed in connection herewith, shall operate as a waiver thereof, nor shall a single or partial exercise of any other power or right. The Waiver by Payee of any payment or any default in payment or any delay in payment allowed by Payee shall not modify the terms hereof, but shall be deemed an isolated event with Payee being entitled to Maker's full and complete performance.

6. Attorneys' Fees and Costs. In the event a Default shall occur, and in the event that thereafter action is commenced to collect amounts remaining due hereunder, then and in such case Makers promises to pay Payee's reasonable attorneys' fees and all expenses incurred in connection with such action.

7. Notices. All notices, requests, demands, or other communications under this Agreement shall be in writing. Notice shall be sufficiently given for all purposes as follows:

 i. Personal delivery. When personally delivered to the recipient. Notice is effective on delivery.

 ii. First-class mail. When mailed first class to the last address of the recipient known to the Party giving notice. Notice is effective three (3) mail delivery days after deposit in a United States Postal Service office or mailbox.

 iii. Certified mail. When mailed certified mail, return receipt requested. Notice is effective on receipt, if delivery is confirmed by a return receipt. Overnight delivery. When delivered by overnight delivery via Federal Express/Airborne/United Parcel Service, charges prepaid or charged to the sender's account. Notice is effective on delivery, if delivery is confirmed by the delivery service.

Addresses for purpose of giving notice are as set forth following the signatures of the Parties below. Any Party may change its address by giving the other Party notice of the change in any manner permitted by this Agreement. Any correctly addressed notice that is refused, unclaimed, or

undeliverable because of an act or omission of the Party to be notified shall be deemed effective as of the first date that said notice was refused, unclaimed, or deemed undeliverable by the postal authorities, messenger, or overnight delivery service.

If to Makers: 3 Columnar Ladera, LLC
     4740 Green River Road, Ste 103
     Corona, Ca 92880


If to Payee: Chun-Wu Li
     975 Manor Way
     Corona, CA 92882


8. Governing Law. This Note is being executed and delivered and is performable in the State of California, and the laws of such state shall govern the construction, validity, enforcement and interpretation hereof, except to the extent federal laws otherwise govern the validity, construction, enforcement, and interpretation hereof. Jurisdiction and venue over any controversy, claim or remedy, arising out of, or relating to, this Note or any breach hereof shall be the Superior Court of ORANGE County, California.

9. Headings. The headings of the sections of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

10. Successors and Assigns. All of the covenants, stipulations, promises and agreements in this Note contained by or on behalf of Makers shall bind his heirs, executors, personal representatives, successors, and assigns, whether so expressed or not; provided, however, that Makers may not, without the prior written consent of the Holder hereof, assign any rights, duties, or obligations under this Note.

11. Time is of the Essence. Time is of the essence of this Note and of each and every provision hereof.

12. Note. As used herein all references to the "Note" shall refer to this Promissory Note.

13. Security. This Promissory Note shall be secured by a Deed of Trust against the property most commonly known as (3 Columnar St Ladera Ranch, CA 92694). Payee acknowledges the sufficiency of the Deed of Trust and the Collateral that is secured by the Deed of Trust.

14. Acknowledgements and Representations of Payee. Payee acknowledges and represents to Payee the following:
    1. The funds that are being tendered to Maker are lawful and of non-criminal origin.
    2. The funds being tendered to Maker are intended as a loan and not an investment.
    3. Payee shall have no equity or ownership stake in any endeavor Maker chooses to use the borrowed funds to engage in.
    3. No representations have been made to Payee concerning the value, condition or marketability of the property securing the loan. Payee shall conduct has conducted his/her own investigation and is satisfied with the sufficiency of the security pursuant to Section 13 above.
    4. Payee is fully informed of his status as lender in this transaction and does not now nor shall Payee in the future make any claim of ownership in the secured property except as a holder of a security interest in the property.

15. Severability. If any court of competent jurisdiction holds any provision in this Promissory Note invalid or unenforceable, the other provisions of this Promissory Note will remain in full force and effect. Any provisions of this Promissory Note held invalid or unenforceable only in part or degree will remain in full force and effect to the extent no held invalid or unenforceable.

16. Parties in Interest. This Promissory Note shall bind Makers and its successors and permitted assigns. This Promissory Note shall not be assigned or transferred by Makers without the express written consent of Payee, except by will or, in default thereof, by operation of law.

17. Section Headings, Construction. The headings of sections in this Promissory Note are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Promissory Note unless otherwise specified.

18. Savings Clause. In the event any provisions hereof shall result, for any reason and at any time, in an effective rate of interest that exceeds the limit of usury or any other law applicable to interest on the indebtedness evidenced hereby, all sums in excess of those lawfully collectable as interest for the period in question shall be (a) applied, to the extent of such excess, against the unpaid principal amount evidenced hereby with the same force and effect as though Makers had agreed to accept such extra payment(s) as a prepayment or (b) if the indebtedness has been fully paid, refunded by Makers to Payee to the extent of such excess.

Date: 7/21/15

Maker

Maker                                              Date: _____

Payee                                              Date: _____